Mark Nugent, Providence, for plaintiff.

Robert D. Parrillo, Hanson Curran & Parks, Providence, for defendant.

Gordon ONDIS et al.

v.

Norman PION et al.

No. 82–260–Appeal.

Supreme Court of Rhode Island.

Aug. 20, 1985.

OPINION

WEISBERGER, Justice.

This is an appeal from a Superior Court judgment resulting from a negligence action brought by Gordon Ondis on behalf of his minor daughter, Aleta, against the town of Lincoln and Norman Pion, a Lincoln police officer. The plaintiffs sought damages as a result of a 1974 accident in which Aleta, while riding her bicycle, was injured after having been struck by a motor vehicle operated by Officer Pion. The jury attributed fault for the accident in the following manner: Officer Pion was found to be 5 percent negligent; Aleta, it was determined, was 95 percent negligent. On appeal the plaintiffs raise two issues. The first claim is that mental suffering incurred by Aleta as a result of consciousness of a disfiguring mark resulting from the injury she sustained in the accident should have been allowed by the trial justice to be considered by the jury in assessing compensable damages. The second claim is that the trial justice erred in refusing to compel a physician who was sub-

poenaed to give testimony at trial to testify as an expert witness. In light of our recent holding in *Arlan v. Cervini*, R.I., 478 A.2d 976 (1984), we reverse the trial justice's ruling to exclude consideration of the plaintiff's mental suffering and remand this case solely for a new determination of damages. We uphold the trial justice's refusal to compel expert testimony.

The facts of this case stem from an August 24, 1974 collision at or near the intersection of Great Road and Meeting House Road in the town of Lincoln. Officer Pion was traveling on Great Road when shrubbery approximately twelve feet high blocked the view of the intersecting Meeting House Road out of which plaintiff Aleta Ondis came riding. Unable to see Aleta until she was no more than thirty feet in front of his vehicle, Officer Pion braked immediately; however, the left front bumper of his cruiser came in slight contact with the bicycle's rear tire.

Aleta retained little recollection of the events just prior to and during the collision. As a result of the accident, however, she sustained several injuries, the most serious of which was to her left thigh. This area became swollen and did not diminish in size in the seven years between the accident and the trial.

During the course of the proceedings below, the trial justice struck testimony elicited from Aleta relating to mental suffering experienced by her as a result of her consciousness of her disfigurement. In his charge to the jurors, the trial justice reiterated that no consideration should be given by them to plaintiff's mental suffering including shame, humiliation, or embarrassment arising from plaintiff's consciousness of her disfigurement.

At the time of the accrual of this action and at the time of the trial of this case, the rule of compensation for a disfiguring injury was that enunciated in our opinion in *Halladay v. Ingram*, 78 R.I. 464, 82 A.2d 875 (1951). In that case, which involved a disfiguring injury resulting from a bus accident, this court drew a distinction be-

tween the disfigurement itself, along with accompanying scars that were compensable elements in assessing a plaintiff's damages, and the mental suffering arising out of the shame or humiliation resulting from the consciousness of such disfiguring marks that did not constitute an element of damages. *Id.* at 470, 82 A.2d at 878. Consequently, the trial justice, in denying compensation for mental suffering, was applying that which appeared to be the settled law of this state and was certainly correct in his statement of the law as it then existed.

Recently, however, we expressly overruled *Halladay* in *Arlan v. Cervini*, —— R.I. ——, 478 A.2d 976 (1984). In *Arlan* a plaintiff suffered extensive facial injuries as a result of an automobile accident and was left with serious and permanent facial scarring. In reviewing the plaintiff's claim for damages, we asserted that

"mental suffering, which may include nervousness, grief, anxiety, worry, shock, humiliation, embarrassment, or indignity, arising from consciousness of a facial or bodily scar, is a compensable element of damages. In so holding, we note that this rule has long been recognized in many other jurisdictions and reflects what we consider to be a sound and just approach to the problem of compensation for personal injuries. To the extent that our decision in *Halladay* is inconsistent with our holding today, it is overruled." *Arlan*, R.I. at, 478 A.2d at 980. (Footnote omitted.)

We are therefore confronted with the issue of the extent, if any, of *Arlan's* application to the case at bar. This issue depends entirely upon our determination of whether the doctrine of *Arlan*, which is now the prevailing law, should be applied to cases such as the case at bar that were pending on appeal at the time that opinion was filed.

In reaching our conclusion on this first issue, we note initially that applying a newly announced standard to facts occurring earlier in time than the announcement of

that standard is to give retroactive effect to the newly fashioned rule. Instructive in the area of this judicial determination are the cases of the United States Supreme Court that have commented on such practice. The Supreme Court has often recognized that the retroactive application of its new rules to cases subject to the Court's power is neither compelled nor prohibited by the United States Constitution. *Desist v. United States*, 394 U.S. 244, 248–49, 89 S.Ct. 1030, 1035, 22 L.Ed.2d 248, 254–55 (1969); *Johnson v. New Jersey*, 384 U.S. 719, 733, 86 S.Ct. 1772, 1781, 16 L.Ed.2d 882, 892 (1966); *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608 (1965); *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, 366 (1932). Further, the Court has recognized that no distinction is to be drawn between civil and criminal cases in which the Court retroactively decides to apply a new rule. *Linkletter*, 381 U.S. at 627, 85 S.Ct. at 1736–37, 14 L.Ed.2d at 607.

In the field of criminal law, however, no more fertile ground exists in which to observe, among the Supreme Court's decisions, "an extraordinary collection of rules * * * govern[ing] the [retroactive or prospective] application" of newly enunciated principles of law. *Desist*, 394 U.S. at 256–57, 89 S.Ct. at 1038, 22 L.Ed.2d at 259 (Harlan, J., dissenting).

For instance, retroactive effect of new legal standards has been given application "to the parties and facts of the case in which the new rule was announced, to other cases then pending, to cases that were 'final' in the sense of being no longer subject to direct review, and to cases tried or retried in the future but arising from earlier occurrences." Annot., 65 L.Ed.2d 1219, 1223 (1981).

Among the United States Supreme Court's cases in which fully retroactive effect was given to new rules are a number of hallmark decisions that have enhanced the rights of an accused criminal. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct.

589, 30 L.Ed.2d 592 (1972); *McConnell v. Rhay*, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

More commonly, however, the Supreme Court has chosen to apply the new rule only to the case in which the rule is announced and to other cases then pending on direct review. *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The application of the rules in the foregoing cases was, however, retrospective in the sense that they applied to events and occurrences that had taken place prior to the application of the new rule. The equities of such a practice were first articulated by Justice Harlan in his thoughtful and instructive dissent in *Desist*. In Justice Harlan's view,

> "all 'new' rules of constitutional law must, at a minimum, be applied to all those cases which are still subject to direct review by this Court at the time the 'new' decision is handed down.
>
> . . . .
>
> "[W]hen similarly situated defendant[s] com[e] before us, we must grant the same relief or give a principled reason for acting differently. We depart from this basic judicial tradition when we simply pick and choose from among similarly situated defendants those who alone will receive the benefit of a 'new' rule of constitutional law." *Desist*, 394 U.S. at 258–259, 89 S.Ct. at 1039, 22 L.Ed.2d at 260–61 (Harlan, J., dissenting).

Recently in *Shea v. Louisiana*, —— U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), the Supreme Court noted the persuasiveness of Justice Harlan's reasoning both in *Desist* and in *Mackey v. United States*, 401 U.S. 667, 675, 91 S.Ct. 1160, 1164–65, 28 L.Ed.2d 404, 410 (1971), and thus agreed

with the position that new rules of constitutional law will be applied to those cases still subject to direct review at the time the new decision is handed down. *Shea,* —— U.S. at ——, 105 S.Ct. at 1069, 84 L.Ed.2d at 38.

Although it may be argued that different policy considerations should govern when the retroactivity principle is considered in the context of criminal, as opposed to civil, cases, the Supreme Court has not been remiss in providing equally sound explanations for its decisions in which retroactive effect was given to new rules expounded in cases involving bankruptcy law, *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951), patent law, *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), and tax law. *United States v. Estate of Donnelly,* 397 U.S. 286, 90 S.Ct. 1033, 25 L.Ed.2d 312 (1970).

In fact, in those cases in which the Supreme Court has chosen to give *prospective* effect to a new rule by confining its operation to future cases arising from fact situations occurring after the announcement of the new rule, the rationale for such action has been either that the new rule is such a departure from clear past precedent that fairness and the administration of justice compels it, *see Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), or that the new rule has come about under such novel or extraordinary circumstances that no foreshadowing of its principles could have been predicted. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–09, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296, 306–07 (1971).

In Rhode Island, criminal cases involving the issue of retroactive or prospective application of a new rule have focused on the same issues with which the federal cases have been concerned. In *Mastracchio v. Houle,* —— R.I. ——, 416 A.2d 116 (1980), we were faced with the issue of the propriety of a trial justice's forbidding a defendant in a criminal case to confer with his lawyer during a weekend recess that fell between the last days upon which defendant was being cross-examined. Subsequent to the defendant's conviction and during the pendency of the defendant's appeal on this issue, the United States Supreme Court announced its decision in *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), holding that in a similar case, such a deprivation of access to an attorney violated a defendant's Sixth Amendment rights. In applying the rule in *Geders* retroactively to the circumstances presented in *Mastracchio,* we noted:

"It must be considered that unlike the decisions in *Mapp, Miranda, Wade, Gilbert, Katz,* and even *Gideon,* the [United States Supreme] Court's opinion in *Geders* was not perceived to be a departure from established past principles. *Geders* was a decision based upon federal and state precedents. It did not constitute a seismic innovation, comparable to adoption of a new exclusionary rule or a new requirement for provision of counsel, in circumstances where none had been applied before." *Mastracchio,* —— R.I. at ——, 416 A.2d at 121–22.

In other criminal cases, we have similarly given retroactive effect to newly announced standards applying them to cases pending on direct review. *State v. O'Coin,* —— R.I. ——, 417 A.2d 310 (1980). *See Infantolino v. State,* —— R.I. ——, 414 A.2d 793 (1980) (applying the newly announced standard relating to burden of proof on the issue of self defense to a case pending on direct review at the time of its promulgation). In *State v. Porter,* —— R.I. ——, 437 A.2d 1368, 1372 (1981), we observed that our decision to apply a new rule retroactively to a criminal proceeding pending before us on direct review would be influenced by criteria such as those that were articulated in *Linkletter,* 381 U.S. at 636, 85 S.Ct. at 1741, 14 L.Ed.2d at 612. These included the purpose of the new rule, the extent of reliance on the old doctrine, and

the effect of retroactive application on the administration of justice. We went on to state that among these factors, the purpose of the new rule is of paramount importance. *Id.* at 636–37, 85 S.Ct. at 1741–42, 14 L.Ed.2d at 612–13.

Finally, in *State v. Arpin*, 122 R.I. 643, 657, 410 A.2d 1340, 1347–48 (1980), we collected a number of cases in which the issues of prospectivity and retroactivity were treated. In reviewing those cases, we noted that "[i]n the past this court has chosen to apply new rules of law in the manner best suited to serve the interests of justice and to avoid hardship." *Id.* at 657, 410 A.2d at 1347. *See, e.g., Digby v. Digby,* 120 R.I. 299, 388 A.2d 1 (1978) (abrogation of doctrine of interspousal immunity applied to case at bar and to all cases arising sixty days or more after date of filing of opinion); *Worsley v. Corcelli,* 119 R.I. 260, 377 A.2d 215 (1977) (rule allowing counsel to argue per diem method of calculating damages for pain and suffering to jury may be applied in this case and to all cases which go to trial sixty days after date of filing of this opinion); *State v. Macarelli,* 118 R.I. 693, 375 A.2d 944 (1977) (statutory change in criminal law making penalty for conspiracy to commit offense less severe than offense itself held to apply to case at bar and to cases pending on direct review); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975) (adoption of new rule replacing considerations of invitee, licensee, and trespasser with standard of reasonable foreseeability for entrants on an owner's land applied to case at bar and to cases arising sixty days after date of filing of opinion); *Haddad v. First National Stores, Inc.,* 109 R.I. 59, 280 A.2d 93 (1971) (adoption of restatement position concerning attractive nuisance applied to case at bar and to cases arising sixty days after date of filing of opinion); *State v. Kaufman,* 108 R.I. 728, 279 A.2d 412 (1971) (new rule requiring certain proof of maintenance of gambling facility applied to

case which had not yet reached final judgment).

In *Ritter v. The Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971), we announced a new rule in respect to the right of recovery under the theory of strict liability. In that case we did not discuss either retroactive or prospective application of this new rule. However, in *Romano v. Westinghouse Electric Co.,* 114 R.I. 451, 336 A.2d 555 (1975), the rule of strict liability in tort was applied to an action that had accrued on March 3, 1970 (prior to the date of the announcement of the rule in *Ritter* ).

■ Considering the foregoing principles in light of the facts of the case at bar, we conclude that application of the rule announced in *Arlan, supra,* to cases pending on appeal is entirely appropriate. Essentially, we decided in *Arlan,* — R.I. at — n. 2, 478 A.2d at 980 n. 2, in accordance with numerous opinions of other jurisdictions, that the better rule would eliminate the artificial distinction under which compensation would be allowed for a disfiguring injury but not for the mental suffering and humiliation that would accompany the disfigurement. We also noted in *Arlan,* — R.I. at —, 478 A.2d at 978, our decision in *Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285 (1969), wherein we authorized recovery for mental suffering and humiliation incident to a tortious act of false imprisonment and thus established the principle that a plaintiff was entitled to recover for mental injuries that he sustained as a direct result of a physical act of the defendant.

In any event, our departure from the rule of *Halladay v. Ingram,* 78 R.I. 464, 82 A.2d 875 (1951), was not a radical innovation. Indeed, it reflected our considered judgment that divorcing mental distress and humiliation from the compensation due to one who had experienced a disfiguring injury was really to create a distinction without a fully rational difference.[1] There-

---

**1.** Although arriving at such fine distinctions in

respect to calculating damages may have been

fore, the application of this rule to cases pending on appeal would promote justice and would not, in our opinion, have any significant adverse impact upon judicial administration since the purpose of the new rule would be only to allow full compensation for an already existing and demonstrable physical injury.

The second issue on appeal concerns the refusal of the trial justice to require an unwilling physician to testify as an expert on behalf of the plaintiff at trial. The physician, a plastic surgeon, had been subpoenaed by the plaintiff and did testify factually concerning the extent of the plaintiff's injuries that he had observed and treated. He declined voluntarily to offer any opinions in respect to the medical prognosis relating to the injury. We have previously held in *L'Etoile v. Director of Public Works of Rhode Island,* 89 R.I. 394, 153 A.2d 173 (1959), that an expert witness who had not been engaged but merely subpoenaed could not be compelled to give opinion testimony against his will. We reaffirm our holding in *L'Etoile* and again declare that it is a sound principle from which we shall not lightly depart. It is the obligation of a party who desires expert testimony to obtain the services of a qualified person on a voluntary basis. We believe that compelling expert testimony would in essence involve a form of involuntary servitude that should normally not be inflicted upon a person merely because of his professional expertise.

For the foregoing reasons, the plaintiff's appeal is denied in part and sustained in part. The judgment is vacated in respect to damages, and the papers in the case may be remanded to the Superior Court for a new trial on the issue of damages only.

The Chief Justice participated in the oral argument and in the decision of the court, but he did not participate in the publication of the formal opinion.

possible as legal fiction or in the fantasies of extraordinary thinkers like the great German jurist Von Jhering, in whose conception such hairsplitting was entirely possible, we humbly admit that a division of damages under the old rule was probably beyond the rational powers of the average juror. *See* Cohen, *Transcendental Nonsense and the Functional Approach,* 35 Colum.L.Rev. 809, 809 (1935).